IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| YUNG LE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | Civil Action 4:22-cv-1071 |
| | § | |
| LOCKHEED MARTIN CORP., | § | **JURY DEMANDED** |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S FIRST AMENDED
## COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

Plaintiff Yung Le presents his Complaint for unlawful discrimination in violation of 42 U.S.C. § 1981 (the "Civil Rights Act of 1866") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621.

### PARTIES

1.     Yung Le is a citizen of the United States, residing in Tarrant County, Texas.

2.     Lockheed Martin Corp. is a foreign corporation and may be served with process by serving its registered agent, Corporation Service Company dba CSC –

Lawyers Incorporating Service Company, at its registered address, 211 E. 7th Street,

Suite 620, Austin, TX 7801-3218

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4)

and 28 U.S.C. § 1331.

4.      This is a suit authorized and instituted pursuant to the Civil Rights Act

of 1866 and Title VII; and declaratory and injunctive relief pursuant to 28 U.S.C. §§

2201 and 2202.

5.      Venue of this Court is authorized by 42 U.S.C. § 2000e-5(f)(3) because

the claims include unlawful employment practice under Title VII alleged to have

been committed in the state of Texas and a plaintiff may file in in any judicial district

in the State in which the unlawful employment practice is alleged to have been

committed. *Id.* Because this district is in Texas it is a proper venue.

## BACKGROUND

**Foreseeability of the Problem**

6.      A Glassdoor survey reports that 61 percent, or about three in five U.S.

employees have witnessed or experienced discrimination in the workplace.[1]

---

[1] https://about-content.glassdoor.com//app/uploads/sites/2/2019/10/Glassdoor-Diversity-Survey-Supplement-1.pdf
(Last visited April 14, 2021).

7.    The same survey reports that 42 percent of employed adults in the U.S. have experienced or witnessed racism in the workplace; the highest percentage of the four countries surveyed.[2]

8.    A report noted by the EEOC states that 75 percent of employees who spoke out against workplace mistreatment faced some form of retaliation.[3]

9.    A report by Ethics & Compliance Initiative finds that when employees at all levels are held accountable, retaliation is not as prominent; however, the retaliation rate is only 16 percent when managers are held accountable compared to approximately 40 percent when managers are not held accountable.[4]

**The Purpose of the Law**

10.    The federal anti-discrimination laws primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

11.    Employers may be liable for punitive damages who do not make good faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

---

[2] *Id.*

[3]  https://www.eeoc.gov/select-task-force-study-harassment-workplace#_ftn65 (Citing Lilia M. Cortina & Vicki J. Magley, *Raising Voice, Risking Retaliation: Events Following Interpersonal Mistreatment in the Workplace*, 8:4 J. Occupational Health Psychol. 247, 255 (2003)).

[4] https://www.ethics.org/knowledge-center/increasing-employee-reporting-free-from-retaliation/ (Last visited April 14, 2021).

12.     The right to expect that corporations hire human resource (HR) representatives qualified to follow discrimination and retaliation laws is essential to our community.

13.     The right to expect that corporations will adequately train managers to follow discrimination and retaliation law is essential to our community.

14.     The right to expect that corporations will supervise managers to follow discrimination and retaliation law is essential to our community.

15.     The right to expect that corporations will prevent any form of discrimination or retaliate against persons who report discrimination is essential to our community.

16.     The right to expect that corporations must care about workplace laws to protect us from damages is essential to our community.

**Lockheed Martin Is Worldwide**

17.     Lockheed Martin is a global aerospace, military support, security and technology industry. Lockheed Martin provides defense products and services to the United States and many countries all over the world.

18.     Lockheed Martin has offices around the world, employing over 114,000 employees.

19.     Lockheed Martin's net worth exceeds $50 billion.

Lockheed Martin knows that discrimination and retaliation are foreseeable as potential problems in its workplace.

**Lockheed Martin's Serious System Failure**

20.    Lockheed Martin hires HR personnel who are not qualified to follow policies prohibiting discrimination and retaliation laws.

21.    Lockheed Martin fails to adequately train its managers to follow policies prohibiting discrimination and retaliation laws.

22.    Lockheed Martin fails to supervise its managers to ensure they follow policies prohibiting discrimination and retaliation laws.

23.    Lockheed Martin discriminated against Mr. Le because of his age, race, and sex.

24.    Lockheed Martin fabricated malicious charges to remove Mr. Le from his executive position of managing the Northern Europe region and demoted him.

25.    Lockheed Martin replaced Mr. Le, a 60 year old Asian male with a younger White female.

26.    When Mr. Le complained and provided evidence showing race, age and sex discrimination, Lockheed Martin retaliated and terminated Mr. Le without cause.

27.    In 2020, Lockheed Martin put in place two new sales executives, Randy Howard and Erin Mosely.

28.    In 2021, Mr. Howard asked when Mr. Le plan to retire.

29.    Mr. Le responded that he was not planning to retire soon.

30.    Mr. Le was successful in his position, receiving more awards than any employee at Lockheed Martin.

31.    Mr. Le planned to continue to lead the Northern European region, because of the successful business and excellent relationship he had developed with the international customers and continued to be a highly respected as an executive for Lockheed Martin.

32.    Mr. Howard made statement that Mr. Le makes too much money and doesn't need to work.

33.    Mr. Howard also made negative racial comment against Mr. Le race of origin that "Vietnamese are leaches."

34.    Mr. Howard made comments about Mr. Le's high salary and age several times during 2021.

35.    Mr. Le is the only Asian, male, sales executive in Mr. Howard and Ms. Moseley's organization.

36.    When Mr. Howard learned that Mr. Le was turning 60, he asked Mr. Le when he would retire.

37.    Mr. Le responded that he was not planning to retire soon.

38.    Mr. Le wanted to continue to lead the Northern European region, because of the successful business and excellent relationship he had developed with the international customers and continued to be a highly respected as an executive for Lockheed Martin.

39.    Mr. Howard and Ms. Mosely wanted Mr. Le to retire and give his position to Ms. Tara Lause.

40.    Ms. Lause's qualifications are significantly less that Mr. Le's qualifications for the position.

41.    After Mr. Le informed Mr. Howard that he did not want to retire, Mr. Howard began to make a false accusation that Mr. Le's team is not happy with Mr. Le's leadership.

42.    The false claim that was not stated in writing.

43.    The truth was that Mr. Le's team was not happy with Mr. Howard for failing to provide the team with sufficient resources.

44.    Mr. Le's provided Mr. Howard with evidence that his statement was false.

45.    In October 2021, Mr. Le was accused of making three negative comments against women.

46.    The accusations were false.

47.    These accusations were the first time a complaint was made to HR against Mr. Le in his 38 year career with Lockheed Martin.

48.    The timing was shortly after Mr. Howard asked Mr. Le when he was going to retire.

49.    Lockheed knows that the allegations were false.

50.    Two of the statements were found to be unsubstantiated and the third was taken out of context through a sham investigation.

51.    Lockheed Martin did not provide Mr. Le with details about the allegations, such as who made the allegation, who was interviewed, and what was said.

52.    Mr. Le was not allowed to adequately defend himself in the investigation.

53.    The investigation did not follow standard guidelines and protocols to ensure a fair investigation.

54.    After the investigation ended, Mr. Le called some of the current and former employees and peers to apologize if the allegation was true.

55.     To Mr. Le's surprise, these employees were not contacted for the investigation, and provide strong support that Mr. Le would never made those alleged statements.

56.     Mr. Le has a long history of treating women with respect and encouraging and assisting their careers at Lockheed Martin.

57.     During 2021, Lockheed Martin harassed Mr. Le by making statements that Mr. Le should not be working for his age, that someone is after his job, and that his peers should also not be working because of old age.

58.     Mr. Le was working under a hostile environment, where his retirement was questioned in front of a customer and in email.

59.     Mr. Le raised this concerns to HR Vice President and Ethics but these concerns were never investigated.

60.     Mr. Howard also falsely claimed Mr. Le harassed a subordinate, Ms. Kaci Dobbs.

61.     On January 20, 2022, Mr. Howard issued a letter to Mr. Le that he was demoted and suspended for one week.

62.     During the suspension, Lockheed Martin instructed Mr. Le to not communicate with anyone.

63.    The same day as the suspension, Lockheed offered Mr. Le a lower sales position in the Asia region.

64.    Lockheed Martin gave Mr. Le one week to make accept the offer.

65.    The treatment was discriminatory and not industry standard for an employee with 38 years of stellar experience with the same company.

66.    Mr. Le complained to Mr. Howard that Lockheed Martin was attempting to force Mr. Le to quit because taking a less paid in the Asia region is viewed as an insult to Mr. Le's career, and the new Asia job would be a set up to fail because Mr. Le had no experience or business contacts in Asia, especially after he reached the age of 60.

67.    Mr. Howard responded by suggesting Mr. Le retire from Lockheed Martin.

68.    On January 31, 2022, Mr. Le informed Lockheed Martin of his decision to accept the lower paid position in the Asia region.

69.    Mr. Le wanted to stay employ with Lockheed Martin to clear his name from the false accusation and demotion.

70.    On February 3, 2022, Mr. Le made a claim of race, gender and age discrimination to the Vice President of Human Resources, Ms. Julia Novikoff, at Lockheed Martin, with supporting facts.

71.    On February 22, 2022, Mr. Howard informed Mr. Le that Lockheed Martin was terminating Mr. Le's employment and that his last day of employment was February 24, 2022.

72.    Mr. Le asked Mr. Howard for the reason for the termination.

73.    Mr. Howard could not provide a reason.

74.    Mr. Le asked Lockheed Martin HR for a letter of termination.

75.    Lockheed Martin stated to Mr. Le in a letter stating that his termination was due to a layoff.

76.    This was not true; Mr. Le's Asia region was short of staff.

77.    The termination is retaliation against Mr. Le for reporting the discriminatory practices at Lockheed Martin.

Lockheed Martin then gave Ms. Lause Mr. Le's position, completing the discriminatory plan.

**Consequences of Failure to Enforce**

78.    Because Lockheed Martin fails to hire qualified HR personnel and adequately train and supervise managers, the corporation discriminates and retaliates against by first falsely accusing its key employee, then demoting and terminating him because of his race, gender, age, and protected activity in violation of the law.

79.    Lockheed Martin discriminated against and fired Mr. Le for opposing discrimination in the workplace, although Mr. Le had 38 years of outstanding performance as a leader and one of the best sales employee that brought in over $30 billion of business for Lockheed Martin.

80.    Lockheed Martin greatly benefited from outstanding relationships with international governments and military leadership in northern European countries, which Mr. Le has cultivated and developed for many years.

81.    If Lockheed Martin had not ignored his 38 years of exceptional performance and his discriminatory treatment, Mr. Le would not have been terminated.

82.    Other employees who had been accused of making inappropriate statements or conduct were not terminated.

83.    Other employees were given only warnings or reprimands or no discipline at all.

84.    Although foreseeable, Lockheed Martin failed to prevent discrimination and retaliation against Mr. Le by recognizing the signs of discrimination and by rewarding compliance instead of non-compliance.

85.    Lockheed Martin ignored or failed to conduct a fair investigation of Mr. Le's complaints.

86.    Lockheed chose to not talk to all important witnesses in its investigation of Mr. Le of his complaints.

87.    Lockheed Martin chose not to look at all important documents in its investigation of his complaints.

88.    Lockheed Martin chose not to evaluate Mr. Le with his peers in its investigation of his complaints.

89.    Lockheed Martin chose not to adequately train mangers on the signs to recognize discrimination.

90.    Lockheed Martin chose not to adequately train mangers on the signs to recognize retaliation.

91.    Lockheed Martin failed to monitor the workplace for signs of retaliation because managers and executives intentionally carry out discrimination and retaliation.

92.    Lockheed Martin managers recognize discrimination if someone makes racist comments, but managers are not adequately trained to look for signs of discrimination absent racial comments.

93.    Lockheed Martin chose not to adequately train managers and executives that employees who discriminate are not going to admit to discriminating against employees.

94.     Lockheed Martin chose not to adequately train managers and executives that people are afraid to report discrimination and retaliation because the discrimination and retaliation will only get worse.

**History of Discrimination and Retaliation**

95.     Mr. Le is not the only person to have complained of discrimination or retaliation at Lockheed Martin.

96.     Many other persons have complained of discrimination and retaliation at Lockheed Martin.

97.     Lockheed Martin does not adequately keep records of prior discrimination or retaliation complaints.

98.     In continuing rather than eliminating retaliation, Mr. Le became the person being investigated and was terminated when he provided evidence of discrimination.

99.     Lockheed Martin managers and executives ignored the signs of discrimination and retaliation and did not respond to prevent the discrimination and retaliation.

100.   Lockheed Martin ignored Mr. Le excellent history of performance at Lockheed Martin during his 38 years of a stellar career.

101.    Lockheed Martin refused to protect Ms. Le from retaliation during the investigation; instead, he became the target of both HR and management for adverse actions, unfair demotion and termination.

**Policies Do Not Enforce Themselves**

102.    Lockheed Martin has written polices created for the purpose of following laws against discrimination and retaliation.

103.    Lockheed Martin knows that the written polices do not enforce themselves.

104.    Lockheed Martin policies promised to protect Mr. Le from discrimination and retaliation.

105.    Lockheed Martin violated its own policies by discriminating and retaliating against Mr. Le.

106.    Lockheed Martin breached its promise to protect Mr. Le from discrimination and retaliation.

107.    Lockheed Martin failed to compare his treatment with others accused of making inappropriate comments.

108.    Lockheed Martin refused to compare Mr. Le's stellar performance with other persons similarly situated to him who were not Asian.  Mr. Le is the only Asian executive in Mr. Howard and Ms. Moseley organization.   Mr. Howard making

negative comment against Mr. Le's age, his race of origin and falsely accused Mr. Le shown that Mr. Le was discriminated.

**Mr. Le Was a Stellar Employee and a Model U.S. citizen**

109. Mr. Le is an immigrant from Vietnam. Mr. Le came to the U.S. in April 1975 after the Vietnam war, and became a US citizen in 1981. He's also an Eagle Scout.

110. Mr. Le attended universities in Texas and received a Bachelor of Science in Electrical Engineering, a Master of Science in Electrical Engineering, a Master of Science in Engineering Management, and a Master of Business Administration.

111. Mr. Le started his career at Lockheed Martin (then General Dynamics) in 1983. Mr. Le was a 38 year employee with excellent performance record and never a complaint written up until January 2022, when his newly appointed supervisors, Mr. Randy Howard and Ms. Erin Mosely wanted Mr. Le to vacate his position using false and sham investigation tactics.

112. Mr. Le has been married for 25 years. He and his wife have three grown boys, including twins. The unfair termination from Lockheed Martin has created heavy stress in Mr. Le's married life.

113.    At Lockheed Martin, Mr. Le was the leader of Asian American Group for the Mid-West region. In this capacity, he has led and collaborate with many minority groups at Lockheed Martin (African American, Women, Hispanic, and LGBT) to promote diversity and equality in the work place.

114.    Mr. Le received two NOVA awards and four AeroStar awards, both are highly prestigious within Lockheed Martin. These awards are only given to top employees every year.

115.    In 2014, Lockheed Martin nominated Mr. Le and he was selected the honor of an Asian American Executive of the Year in the United States, representing Lockheed Martin.

116.    Mr. Le personally brought in $13 billion in sales of fighter aircraft for Lockheed Martin from Israel and Demark.

117.    Mr. Le also held very important role in initiating and shaping of at least $17 billion in sales of fighter aircraft to Belgium, Finland, and Switzerland.

118.    The sales of fighter aircraft made the U.S. stronger because it establishes national security between the U.S. and its allies in Europe.

119.    Mr. Le was responsible for creating many employment jobs in the US, across 50 states, from the sales of these aircraft.

*Plaintiff's First Amended Complaint and Jury Demand*                    *Page 17*

120.    Mr. Le developed and retained excellent relationships with governments, including military and industry leaders, in Northern European countries concerning national security.  Mr. Le helped many European countries and industries in creating strategic jobs.

121.    Mr. Le is a well-known leader at Lockheed Martin. He has coached and mentored many minorities (African American, Asian, and Women) during his career at Lockheed Martin.  Many of Lockheed Martin executives today were once worked for or mentored by Mr. Le.

122.    Lockheed Martin always gave Mr. Le excellent performance evaluations until 2022, when Mr. Howard and Ms. Mosely began to look for ways to remove him.

123.    Mr. Le has devoted his 38 years career to Lockheed Martin.

124.    As Sales Executive, he has spent many days travel international to bring in substantial business to Lockheed Martin.

125.    Mr. Le missed many important family events due to his extensive travel. He could stay at home to help his wife raised their children, but the demand of his job doesn't allow.

126.    Mr. Le's wife also believed in Lockheed Martin and let Mr. Le continue his international work.

127.    Mr. Howard and Ms. Mosely had destroyed Mr. Le's career and reputation using illegal discriminating and retaliating tactics.

**Lockheed Martin Discriminated Because Of Race, Sex, and Age**

128.    Corporations must not discriminate against persons because of race, sex, or age.

129.    Lockheed Martin did not treat Mr. Le as the same as others when it disciplined, demoted, and terminated his employment.

130.    Mr. Le was performing as good or better than his peers.

131.    The difference is Mr. Le is Asian, male, and 60 years of age.

132.    Mr. Le was one of the top performers at Lockheed Martin.

133.    But for his race, sex, age, or protected activity, he would not have been disciplined, demoted, or terminated.

## CAUSES OF ACTION

**Violation of the Civil Rights Act of 1866**

134.    Mr. Le's claim for recovery under the Civil Rights Act of 1866, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

135.   This law entitles a person of color to equal opportunity and treatment in employment.

136.   When an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

137.   A person is also entitled to file suit and recover damages under Civil Rights Act of 1866 for retaliation for opposing or reporting violations of Civil Rights Act of 1866, or for participating in an investigation of a violation of Civil Rights Act of 1866.

138.   Mr. Le belongs to a protected group and was subjected to unwelcome harassment based on his race, including a hostile work environment.

139.   Lockheed Martin knew or should have known of the harassment but took no prompt remedial action.

140.   Mr. Le was subjected to ridicule or insult or other improper conduct based on Mr. Le's race.

141.   The harassment was constant, obscene, obnoxious, shocking to the conscience of the ordinary person.

142.   The harassment was severe and pervasive, interfering with the terms and conditions of Mr. Le employment with Lockheed Martin.

143.    Lockheed Martin's action was severe and pervasive.

144.    The harassment and termination were sufficiently severe or pervasive to alter the conditions of Mr. Le's employment with Lockheed Martin.

145.    The harassment was objectively and subjectively offensive.

146.    The disparaging racial treatment or other improper conduct was unwelcomed and undesirable or offensive to Mr. Le.

147.    The harassment of Mr. Le altered a term, condition, or privilege of his employment at Lockheed Martin.

148.    A reasonable person would find that the harassment created and was abusive working environment.

149.    Employees of Lockheed Martin participated in the harassment of Mr. Le.

150.    Lockheed Martin knew or should have known of the harassment and failed to take prompt, remedial action to eliminate the harassment.

151.    Lockheed Martin has a pattern and practice of discriminating based on race and retaliating against those who oppose or report discrimination.

152.    Mr. Le opposed and reported Lockheed Martin for denying the "right to make" contracts and denying the same "security of persons and property as is

enjoyed by white citizens" in the United States as required by federal law. *See* 42 U.S.C. § 1981.

153.   Lockheed Martin treated Mr. Le adversely after he opposed and reported unlawful discrimination.

154.   Lockheed Martin engaged in material adverse actions against Mr. Le, that might well dissuade a reasonable person from opposing or reporting the discrimination had they known they would face the adverse actions.

155.   The demotion and termination of Mr. Le from Lockheed Martin materially altered his employment, as well.

156.   Lockheed Martin violated the federal statute by intentionally discriminating and retaliating against Mr. Le; and, as a direct result of the discrimination and retaliation caused damages to Mr. Le.

157.   The liability can be either actual or constructive under the *McDonnell Douglas* framework.

158.   Lockheed Martin knew or should have known that its employees were discriminating and retaliating against Mr. Le and taken corrective action to prevent the discrimination and retaliation within its control.

159.   Prevention is the best tool for the elimination of harassment.

160.    Lockheed Martin did not take the steps necessary to prevent the harassment from occurring, such as affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment, and developing methods to sensitize all concerned.

**Compensatory and Equitable Relief**

161.    Mr. Le sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which he is entitled to recovery under his causes of action.

162.    Mr. Le is also entitled to declaratory relief that a violation has occurred.

163.    Mr. Le is also entitled to equitable relief in the form of reinstatement and an injunction against future discrimination or retaliation.

**Title VII Violation**

164.    Mr. Le filed an administrative charge with the Equal Employment Opportunity Commission (EEOC). Mr. Le exhausted his administrative remedies with the EEOC and received a notice of right to sue.

165.    Lockheed Martin has well over 15 employees and therefore qualifies as an employer under Title VII.

166.    Lockheed Martin created a hostile environment, demoted, and terminated Mr. Le's employment because of his race, age, and sex in violation of Title VII.

167.    An employer may not discharge or otherwise discriminate against an employee because of his race, age, sex, or national origin under Title VII, 42 U.S.C. §§ 2000e-2(a)(1).

168.    An employer also may not limit, segregate, or classify employees in any way which would deprive an employee of employment opportunities or otherwise adversely affect his status as an employee, because of the employee's race, sex, or national origin under Title VII, 42 U.S.C. §§ 2000e-2(a)(2).

169.    The effect of the policies and practices pursued by Lockheed Martin has been and continues to limit, classify, and discriminate against employees in way which jeopardize their jobs, deprive them of their employment opportunities, and otherwise adversely affect their status as employees because of their race, age, sex, or national origin.

170.    Lockheed Martin treated Mr. Le adversely because he reported and opposed unlawful discrimination and retaliation.

171.    Lockheed Martin's actions violate Title VII, which prohibits retaliation against any person because the person has opposed any practices forbidden under

Title VII or because the person has filed a complaint, testified, or assisted in any proceeding under Title VII.

172.   The retaliation motivated Lockheed Martin's continuing harassment, hostile work environment, demotion, and termination of Mr. Le's employment.

173.   The actions were knowing and intentional violations of Title VII

**ADEA Violation**

174.   Mr. Le is over 40 years of age.

175.   Mr. Le is qualified for his position.

176.   Lockheed Martin terminated Mr. Le.

177.   Lockheed Martin replaced Mr. Le by someone substantially younger.

178.   Lockheed Martin's reasons for the termination are not believable.

179.   Lockheed Martin willfully violated the ADEA and engaged in a pattern and practice of discrimination.

180.   Lockheed Martin's actions violate the ADEA and caused continuing damages to Mr. Mr. Le, including lost wages, liquidated damages, costs, and interest.

**Compensatory and Equitable Relief**

181.   Mr. Le sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses for which he is entitled to recovery under his causes of action.

182.    Mr. Le is also entitled to declaratory relief that a violation has occurred.

183.    Mr. Le is also entitled to equitable relief in the form of an injunction against future discrimination or retaliation.

**Attorneys' Fees**

184.    Mr. Le is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

**Exemplary Damages**

185.    Mr. Le is also entitled to receive punitive damages because Lockheed Martin engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

<u>**JURY DEMAND**</u>

186. Mr. Le request a trial by jury to the extent allowed by law.

WHEREFORE, Mr. Le requests that Defendant Lockheed Martin answer and that on final trial, Mr. Le have judgment against Defendant for compensatory, declaratory and equitable relief, and exemplary damages, attorneys'

and expert fees, costs of suit, and interest as provided by law, and any further relief
to which they may be entitled.

Respectfully submitted,


*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizbeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

**THE SANFORD FIRM**
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph:  (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF
YUNG LE**